In the Matter of LAURENCE FELDMAN, an Attorney, Respondent. CO-ORDINATING COMMITTEE ON DISCIPLINE OF THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK et al., Petitioners.

First Department, January 29, 1963.

*Henry Weiner* of counsel (*William A. Giustiniani* with him on the brief), for petitioners.

*Raphael H. Weissman* for respondent.

*Per Curiam.* This is a disciplinary proceeding against an attorney and counsellor at law, pursuant to section 90 of the Judiciary Law. The proceeding was instituted by petition of the Co-ordinating Committee on Discipline.

The charges arise out of respondent's handling of personal injury negligence cases. The petition contains nine charges, reducible to six categories of misconduct: wrongful solicitation; filing of false statements of retainer; submission to insurance carriers of false or exaggerated claims; failure to obtain judicial approval of settlements on behalf of infants; attempted subornation of perjury in this proceeding; and improper distribution of settlement moneys.

A Referee, appointed by this court, held hearings on 17 days, over a four-month period. The Referee sustained but three of the nine charges: wrongful solicitation; filing of false statements of retainer; and failure to obtain judicial approval for settlements on behalf of infants. The committee moves to confirm the Referee's report insofar as it sustained the three charges. It seeks disaffirmance of the Referee's rejection of the other charges, save one. The rejected charge not now urged relates to one client only and includes an allegation of attempted subornation of perjury. Respondent cross-moves, seeking a dismissal of all charges.

Respondent was born in 1926, was admitted to the Bar in this Department in 1951, and, after working for and with other lawyers, opened his own office in 1954 or 1955. The conduct in question occurred during the period 1957–1959. He then maintained an essentially one-man office, the staff consisting of a secretary, his layman father, and a recently admitted lawyer. The lawyer was with respondent for a large part of the relevant period, but his conduct is not in question.

Negligence matters constituted one half of respondent's practice. The remainder of his time was given to his general practice and to several theatrical enterprises in which he was interested.

It is concluded that the Referee correctly sustained the charges of wrongful solicitation, filing of false statements of retainer, and failure to obtain judicial approval of the settlement of infants' claims. It is also concluded that respondent improperly distributed settlement moneys in one instance, and the Referee's report to that extent should not be confirmed. The conclusions, consequently, require the imposition of disciplinary sanctions.

The Referee sustained the charge of wrongful solicitation on the basis of 16 of 24 instances specified in the petition. His conclusion should be sustained with respect to 11 of the instances alleged.[*]

In all of these, respondent, or someone purporting to act for him, called on the client shortly after the client's accident. In three, there was direct solicitation; the client had not heard of respondent until he or his purported agent was at the door. In four more, the visit was unrequested; although a stranger had previously recommended respondent, the client had not acted on the recommendation before the visit. These seven are clear cases, there being no explanation, consistent with the clients' testimony, that sufficiently accounts for the unrequested visits. Notably, in three of these the recommendation of respondent was by an unidentified policeman who had called on the client. In the remaining four instances, the visit by respondent or an agent was perhaps requested (giving respondent the benefit of the doubt), but only after a recommendation by an unidentified stranger. The instances viewed separately, but especially if recognized as a pattern of conduct, evidence systematic solicitation, and the Referee's finding of misconduct, therefore, is well supported (*Matter of Shufer*, 12 A D 2d 208, 211–212, motion to dismiss appeal granted 9 N Y 2d 759, motion for leave to appeal denied 9 N Y 2d 611, motion to reargue denied 9 N Y 2d 823, 827; *Matter of Mahan*, 228 App. Div. 241, 245; *Matter of Kreindler*, 228 App. Div. 492, 496–497; cf. *Matter of Neimark*, 13 A D 2d 676).

In five instances the Referee's finding of wrongful solicitation should be rejected. This is because either the credibility of the clients is seriously discounted (Diaz, Steward) or the facts only ambiguously support an inference of solicitation (Perkins, Tammone, Alfaro).

The charge of filing false statements of retainer was sustained by the Referee, based on 13 instances. His conclusion should be confirmed on the basis of 8 of these instances.[**]

The alleged falsity in each of the statements of retainer is in the naming of the referrer of the client. Thus, respondent attempted to conceal wrongful solicitation. In the eight instances which support the charge, the statements of retainer falsely indicated either that the client was previously known, or that he was recommended by a named person. In six instances

---

[*] Silva, Monge, Ortiz, Borrero, Bonterre, Iglesias, Morales, Rodriguez, Martin, Johnson, Miranda.

[**] Monge, Borrero, Alfaro, Iglesias, Diaz, Martin, Perkins, Miranda.

the cases had been solicited, and in the remaining two the named referrer had not introduced the client. In four of these eight cases, the statements give as the source of the recommendation one of three men. Respondent describes these men as unpaid friends who would interview new clients when he was unable, and would do other favors for him. Respondent stated that in retrospect he realizes the statements of retainer should have stated the clients were "contacted by" rather than "recommended by" these interviewers, who were strangers to the clients. He contends that the purpose was full disclosure — the court was to know who had made contact with the client. The point is irrelevant, since the statement of retainer does not inquire into "contacts". Besides, there is no doubt the false information was given to conceal, not disclose, systematic solicitation.

The Referee sustained the charge in five further cases, but these are rejected. In two (Bonterre, Ortiz), the statements of retainer were not found and there was no extrinsic evidence of their falsity. In a third (Johnson), the Referee's holding seems inadvertent, as the case was not specified under this charge. A fourth case (Steward) involves a client whose testimony does not merit belief and who was friendly with the former client of respondent named as the source of the case on the statement of retainer. In the final case (Colon), respondent's uncontradicted testimony establishes that it was brought to him through a related accident case, which had been recommended by the designated referrer.

Four charges involve the submission of false or exaggerated claims of damage. Although the petition listed 34 instances, none was sustained by the Referee. Of these, the committee now urges 13 instances. The Referee's conclusions, however, should be confirmed.

Involved, in most cases, are bills or reports of physicians. Under one charge, letters from employers stating the amount of the clients' lost earnings are the basis for the allegation. In some instances the information contained in the document submitted or described to the carrier was shown to be false. However, respondent's participation in, or knowledge of, the falsity is insufficiently shown (compare, *Matter of Shufer*, 12 A D 2d 208, 210–212, *supra*, involving patent falsity and numerous instances; *Matter of Neimark*, 13 A D 2d 676, *supra*, involving reliance on information from the client).

In one case, respondent used a dentist's report as the basis for a claim of special damage, although examination of the

report indicates that the fee recited was, in part, only an estimate for an unperformed operation. The consequences were not grave, because, in any event, the client apparently needed the operation. The conduct could have been due to carelessness. The matter is too trivial and, in the absence of a specific pattern of conduct, the presence of willfulness too problematic, to merit overruling the Referee's conclusion.

Respondent is also charged with failure to procure judicial approval of the compromise of infants' claims. He admits this, but denies willfulness. The Referee sustained the charge, which involves 13 infants, and his conclusion should be confirmed. Respondent asserts he unwittingly followed the insurance company practice in not obtaining compromise orders for small claims. This defense is invalid: the statutes and rules, not the tolerance by insurance companies, determine a lawyer's responsibility (Judiciary Law, § 474; Civ. Prac. Act, § 980-a; Rules Civ. Prac., rule 294).

The last charge alleges improper distribution of settlement moneys. Three instances are now urged.

The charge should be sustained in one instance (Polanco). Respondent negotiated the reduction of a hospital bill, after the client's claim was settled. Although respondent had received a full fee based on the total settlement, without deduction of the lien, he then received one half of the reduction. He sent a check for the retained amount, after these charges were brought, but the check was never cashed. The distribution was improper, because not supported by a valid separate agreement, and was, prima facie, violative of the rules governing attorneys' fees in negligence matters (Special Rules Regulating Conduct of Attorneys, rule 4).

In the two other instances (Rodriguez, Ortiz) urged under the charge of improper distribution of moneys, the circumstances are suspicious but too ambiguous to warrant overruling the Referee.

Respondent asserts one further defense that relates to the charges in general. Early in 1958 he suffered a complicated injury, keeping him from his office for a large part of the relevant period of time. His secretary and some volunteers, he explains, carried on with the normal operations of his office. This in no way lessens his personal accountability. Respondent had a duty to supervise the conduct of this essentially one-man office in all substantial matters (*Matter of Neimark*, 13 A D 2d 676, *supra*; *Matter of Flatow*, 228 App. Div. 253). The imposition of such a duty is neither harsh nor unfair; professional responsibility

cannot be avoided by turning the back. And this would assume full credit being given to this defense, which the record does not warrant.

The proved misconduct is serious. A pattern of systematic solicitation is evident. This was compounded by the use of false statements of retainer to conceal the system. Necessarily then, respondent's testimony in this proceeding was evasive and reflective of an unrepentant attitude. The failure to obtain judicial approval of infants' settlements is " grievous misconduct ", for it destroys a needed protection for infants' funds from diversion and excessive attorneys' fees (*Matter of Shufer*, 12 A D 2d 208, 214, *supra*; *Matter of Gladstone*, 16 A D 2d 512, 515). In at least one instance, an improper withholding of money due a client was also established.

On the other hand, the mass of specifications and extensive hearings yielded only a residue of sustainable findings. The requisite discipline must, of course, be governed by the findings and not the charges. Moreover, the Referee strongly suggests that respondent has a potential for future service to the public at the Bar, notwithstanding his past misconduct. In recognition of these factors, the court should be moved to extend some leniency.

Accordingly, respondent should be suspended for two years.

BREITEL, J. P., VALENTE, McNALLY, STEVENS and STEUER, JJ., concur.

Respondent suspended for a period of two years.